USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/31/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TARA JAMES,

                              **Plaintiff,**

      -against-

NEW YORK CITY TRANSIT AUTHORITY
and METROPOLITAN TRANSPORTATION
AUTHORITY,

                            **Defendants.**

19-CV-2372 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Tara James brings this action against the New York Transit Authority ("Transit Authority") and the Metropolitan Transportation Authority[1] for discrimination, refusal to accommodate her disability, hostile work environment, and retaliation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Fair Labor Standards Act of 1938 29 U.S.C. §§ 201 *et seq* ("FLSA"), New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). Transit Authority moved for summary judgment against Plaintiff. For the reasons, Transit Authority's summary judgment motion is granted.

**BACKGROUND**[2]

---

[1] Plaintiff names as defendants both Transit Authority and Metropolitan Transportation Authority, Transit Authority's parent corporation. Defendants have stated that documentary evidence establishes Transit Authority as Plaintiff's sole employer, which Plaintiff has not disputed. *See* ECF No. 28 at 1 n.1.

[2] The following factual summary consists of undisputed material facts unless otherwise indicated. Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 283–84 (2d Cir. 2005).

On September 26, 2016, Plaintiff began employment with Transit Authority as a train operator. Pl.'s Rule 56.1 Statement, ECF No. 40-3 ("Pl.'s 56.1 Stmt) ¶ 1. Plaintiff had a one-year probationary period of employment, which was subject to extension. *Id*. ¶ 2. On January 13, 2017, Plaintiff overran a portable train stop. *Id*. ¶ 4. Plaintiff was assigned to restricted duty pending the results of an investigation. *Id*. ¶ 5. On February 6, 23, and 24, 2017, Plaintiff was absent from work due to a stomach virus. *Id*. ¶¶ 7–8. On May 8 and 9, 2017, Plaintiff was absent from work due to "acute gastroenteritis." *Id*. ¶ 9. On May 31, 2017, Plaintiff activated the emergency brakes on her train and failed to report the incident immediately as required, resulting in Plaintiff's assignment to restricted duty. *Id*. ¶¶ 10–11.

On June 5, 2017, Plaintiff met with Carl Hildner of the Probationary Employee Operations Transit Unit and she was issued a "final warning" that additional attendance issues could result in a probation extension or termination. *Id*. ¶¶ 12–13. According to Plaintiff, Plaintiff asked Hildner if she could be accommodated due to her illness and mentioned FMLA leave as a potential accommodation, to which Hildner responded that she could not receive FMLA benefits due to her probationary status. Efron Decl. Ex. A, Pl.'s Dep. 33:9-24, ECF No. 37-1. Plaintiff also claims that Hildner told her she "cannot be sick anymore and the Transit Authority has no patience for young people who are claiming to be disabled." *Id*. 89:17-90:3.

The following day, Plaintiff was absent due to "stomach pain." Pl.'s 56.1 Stmt ¶ 14. She was out sick for six additional days in July and August 2017 for "acute gastroenteritis" and "acute infectious diarrhea." *Id*. ¶¶ 15–16. On September 14, 2017, Transit Authority informed Plaintiff that her probationary period would be extended until March 15, 2018—an additional 56 days to account for the time she was out of service for her train operation investigations and three months to evaluate her performance and compliance with Transit Authority's rules. *Id*. ¶¶ 17–18. Plaintiff

2

was told that the "extension is a final opportunity to improve your professional or operating skills, time and attendance." *Id.* ¶ 19.

Plaintiff was out sick for two days in December 2017 and two days in March 2018 due to "stomach pain." *Id.* ¶¶ 20–21.

Between July 2017 and March 2018, Plaintiff had four visits with two physicians for her stomach ailments. *Id.* ¶¶ 25–29. The physicians' treatment consisted of a recommendation of "diarrhea diet therapy for 3 days," "rest and good oral hydration," exercise and diet modification," and "diet and exercise counseling." *Id.* ¶¶ 25–29.

Plaintiff was on vacation on March 15, 2018, the date her probation period was set to terminate. *Id.* ¶¶ 22–23. The decision to terminate Plaintiff was made on March 13, 2018, Plaintiff returned to work on March 19, 2018, and March 23, 2018 was the effective date of her termination. *Id.* ¶¶ 23–24.

## PROCEDURAL HISTORY

Plaintiff filed her complaint in this action on March 15, 2019. *See* ECF No. 1. Plaintiff amended her complaint on July 6, 2019. *See* ECF No. 11. Transit Authority filed its answer to Plaintiff's Amended Complaint on August 2, 2019. *See* ECF No. 13. Transit Authority filed the instant motion for summary judgment on June 29, 2021. *See* ECF No. 34. Plaintiff filed her opposition on August 19, 2021. *See* ECF No. 40. Transit Authority filed its reply on September 3, 2021. *See* ECF No. 43.

## STANDARD OF REVIEW

Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.Supp.3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of showing that there [is] no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and citations omitted). Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks and citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Still, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## DISCUSSION

### I.     ADA Discrimination Claims

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). "Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." *Berger v. New York City Police Dep't*, 304 F.Supp.3d 360, 368 (S.D.N.Y. 2018).

4

Disability discrimination claims are subject to the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden-shifting analysis. As such, "[a] plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a *prima facie* case." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Accordingly, if a plaintiff establishes her *prima facie* case, the employer then "must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

    a. Adverse Employment Discrimination Claim

To establish her *prima facie* claim of discrimination under the ADA, Plaintiff must establish "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

Plaintiff's claim fails on the second prong. Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities," a "record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12102(2)(A).

5

Plaintiff has offered no evidence that "acute gastroenteritis," "stomach ache[s]," or "acute infectious diarrhea" have substantially limited any major life activities. Plaintiff's affidavit accompanying her summary judgment opposition brief makes no mention of any limitations caused by the stomach issues; rather her brief cites to the Amended Complaint's general allegation that her illness "renders Plaintiff tired and also caused acute pain." Plaintiff's Mem. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Br.") 3, ECF No. 40 (citing Am. Compl., ECF No. 11 ¶ 17). Plaintiff cannot meet her burden with this non-specific allegation from the complaint, as "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Further, Plaintiff has not provided any major life activities that are limited by her alleged disability. *Cf. O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-cv-8502(KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (holding that plaintiff sufficiently alleged a disability by "assert[ing] gastrointestinal issues *and* specifically alleg[ing] several ways in which those issues have impacted" her daily life and "not simply by asserting generic 'gastrointestinal issues'"). Thus, Plaintiff fails to establish her *prima facie* case for an actual disability claim.

To the extent that Plaintiff argues that she is disabled under the ADA's definition because Transit Authority perceived her as disabled, Plaintiff has failed to demonstrate that Transit Authority regarded her as having a qualifying impairment.

"Whether an individual is 'regarded as' having a disability is a question of the employer's intent, rather than whether the employee actually has a disability." *Hammond v. Keyspan Energy*, 349 Fed. App'x. 629, 631 (2d Cir. 2009). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or

6

mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Plaintiff argues that Hildner's statement—as reported by Plaintiff in her Amended Complaint, deposition, and affirmation—that Plaintiff "cannot be sick anymore and the Transit Authority has no patience for young people who are claiming to be disabled," demonstrates that Hildner perceived Plaintiff as disabled. Pl.'s Br. 4; Efron Decl. Ex. A., Pl.'s Dep. 89:17-90:3; *see also* Pl.'s Affirmation ¶ 6, ECF No. 40-1; Am. Compl. ¶ 44. F

First, the Amended Complaint does not allege that Transit Authority discriminated against Plaintiff because it perceived she had disability. Rather, the ADA claim here is presented as a case of *actual* disability. *See* Am. Compl. ¶ 73 ("Defendants violated Plaintiff's rights as provided for in [sic] ADA and FMLA when they engaged in discrimination against Plaintiff because of her disabilities."). Second, apart from Hildner's alleged comments, Plaintiff offers no additional evidence to support her "regarded as" disability claim. As presented by Plaintiff, Hildner's comment expresses his skepticism of Plaintiff's disability rather than conveying a belief in Hildner's disability. *See DiCara v. Connecticut Rivers Council*, 663 F. Supp. 2d 85, 93 (D. Conn. 2009) (granting summary judgment on disability discrimination claim and denying "regarded as" claim because "[t]he evidence on the record tends to show that [defendant] was skeptical of [plaintiff]'s claimed limitations and need for accommodation"). Therefore, Plaintiff fails to establish that Transit Authority regarded Plaintiff as disabled.

Plaintiff has not relied on the "record of such an impairment" definition of disability, and accordingly the Court does not analyze Plaintiff's ADA claims under this section of the ADA's definition of disability.

As Plaintiff has failed to demonstrate she is disabled within the meaning of the ADA, Plaintiff does not satisfy her burden to establish a *prima facie* case of discrimination under the ADA.

      b. *Failure to Accommodate Discrimination Claim*

To establish a *prima facie* case of discrimination based on a failure to accommodate, a plaintiff must show by a preponderance of the evidence "that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal,* 369 F. 3d at 118.

As the Court has concluded that Plaintiff has not established a qualifying disability within the meaning of the ADA, Plaintiff fails to satisfy the first prong of the *prima facie* case for discrimination based on a failure to accommodate.

Thus, Transit Authority's motion for summary judgment is granted as to Plaintiff's claims of discrimination under the ADA.

    **II.**    **ADA Retaliation Claim**

"The *McDonnell Douglas* burden shifting analysis also applies to retaliation claims brought pursuant to the ADA." *Rios v. Dep't of Educ.*, 351 F. App'x. 503, 505 (2d Cir. 2009). Accordingly, Plaintiff first must satisfy the elements of the *prima facie* case of retaliation. "To establish a *prima facie* case of retaliation under the ADA, a plaintiff is required to show by a preponderance of the evidence that: (1) she participated in a protected activity under the ADA; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." *Id*.

The parties do not appear to dispute the second and third prong, however they disagree regarding the first and fourth prong.

Requesting "reasonable accommodation" of a disability "constitutes protected activity" under the ADA. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). "This is true even if the plaintiff's claim that he was entitled to a reasonable accommodation is mistaken, so long as it was made in good faith." *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012). Plaintiff's request of FMLA leave, an accommodation to which she believed she was entitled, qualifies as protected activity. *Bernheim v. New York City Dep't of Educ.*, No. 19-cv-9723(VEC)(JLC), 2021 WL 2619706, at *12 (S.D.N.Y. June 25, 2021), *report and recommendation adopted*, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021) (finding that Plaintiff "engaged in a protected activity under the ADA by requesting FMLA leave as an accommodation"). The adverse employment action alleged is her termination.

A "causal connection" can be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff argues in her brief that Hildner's comments that "he has no patience with young people claiming disability and he was sick of [Plaintiff's] disability issues" and that "[Plaintiff] was becoming sick too often, and that [she] will not keep [her] job because of [her] constant illness" are statements made with retaliatory animus. Pl.'s Br. 8; Pl.'s Affirmation ¶¶ 6–7. In support of this claim, Plaintiff provides that "these statements were made contemporaneously with [sic] request by the plaintiff for accommodations." Pl.'s Br. 8.

Plaintiff testified that she requested FMLA leave only at the June 5, 2017 and September 14, 2021 meetings with Hildner and Transit Authority staff. Efron Decl. Ex. A, Pl.'s Dep. 32:9-33:15; 46:14-50:17; 82:11-16; 98:9-98:25. Plaintiff further testified that Hildner made the above-referenced comments at the same meeting when she was informed she was ineligible for FMLA leave, though she could not recall whether the comments were made at both the June 5, 2017 and September 14, 2021 meetings. *Id*. 89:21-90:9. A factfinder could conclude that Hildner's comment—made in close succession to Plaintiff's accommodation request—that Plaintiff would lose her job due to her illness evinces an intent to retaliate against her for requesting FMLA leave.

Further, Plaintiff could indirectly demonstrate a causal connection by demonstrating the necessary temporal relationship. There is no "bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). "Most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010). However, courts have also found that plaintiffs established causation when a longer period separated the adverse action and protected activity. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (holding that "seven-month gap between [the protected activity] and the decision to terminate her employment privileges is not prohibitively remote").

Plaintiff was terminated in March 2018, approximately six months after September 2018 when she engaged in the latest-occurring instance of the protected activity of seeking FMLA leave. This lapse of time falls within the range that courts have held acceptable to establish an indirect

10

causal connection, and accordingly is sufficient for the causation element. Thus, Plaintiff has established a *prima facie* case for retaliation under the ADA.

At the next step, Transit Authority has articulated a legitimate, non-retaliatory reason for its decision to terminate Plaintiff. Specifically, Transit Authority provides documentary evidence showing that Plaintiff was terminated for "poor time and attendance while on extended probation." Efron Decl. Ex. Q, Probationary Employee Evaluation Form and Memoranda (Status of Employee) dated March 13 and March 22, 2018, at 1, ECF No. 37-13. Transit Authority had also previously issued Plaintiff a warning regarding absences and extended her probationary period to provide Plaintiff an additional opportunity to improve her attendance.

Plaintiff has provided no evidence that Transit Authority's articulated reasons for her termination are a pretext for a retaliatory motive. Indeed, Plaintiff's brief only addresses her *prima facie* case and wholly neglects her burden to demonstrate that Transit Authority's justifications are pretextual. *See Van Ever-Ford v. Off. of Mental Health (Buffalo Psychiatric Ctr.)*, No. 13-cv-412, 2020 WL 5951334, at *15 (W.D.N.Y. Oct. 8, 2020) (granting summary judgment where "evidence shows that [plaintiff] was a probationary employee who had excessive absences" and where "plaintiff has not produced evidence demonstrating that the proffered reason is a pretext").

Accordingly, the Court grants summary judgment as to Plaintiff's ADA retaliation claim.

### III. FMLA Claims and Hostile Work Environment Claims

The Amended Complaint alleges violations of the FMLA, *see* Am. Compl. ¶¶ 72–73, yet Plaintiff's brief makes no mention of her FMLA claims. "[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Additionally, Plaintiff has

withdrawn her hostile work environment claims. *See* Pl.'s Brief 8. As such, both Plaintiff's FMLA and hostile work environment claims are dismissed.

## IV. NYCHRL, NYSHRL and Wrongful Termination State Claims

Plaintiff also brings claims under the NYCHRL and NYSHRL, as well as a miscellaneous claim for wrongful termination. Although federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), this jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also* 28 U.S.C. § 1367(c)(3) (stating that a court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction").

As the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses these claims without prejudice.

## CONCLUSION

For the reasons above, the Court **GRANTS** Transit Authority's summary judgment motion as to all federal claims, and **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims, dismissing them without prejudice. Accordingly, the Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 34, enter judgment, and close the case.

**SO ORDERED.**
**Dated: March 31, 2022**
      **New York, New York**

                                      **ANDREW L. CARTER, JR.**
                                      **United States District Judge**